**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| ALLISWELL CORPORATION, a Bahamian Corporation | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) **Case No. 4:25-cv-170-SEB-KMB** |
| | ) |
| ARKHAUS, INC., a Delaware corporation, SAM PAYROVI, and ARK VESSELS, LLC | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

**AMENDED COMPLAINT FOR DAMAGES,**
**DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**

Plaintiff, Alliswell Corporation ("Alliswell") files its Complaint for Damages, Declaratory Relief and Injunctive Relief against Defendants Arkhaus, Inc. ("Arkhaus"), Sam Payrovi, and Ark Vessels LLC ("Ark Vessels"), and alleges as follows:

**PARTIES, JURISDICTION and VENUE**

1.     Alliswell is a corporation organized under the laws of the Bahamas with a principal place of business in the Bahamas.

2.     Arkhaus is a Delaware corporation with a principal place of business in Florida.

3.     Payrovi is a citizen and resident of the State of Florida and is otherwise sui juris.

4.     Payrovi, at times, has done business under the name "Ark Yachts."

5.     Ark Vessels is a single member Florida LLC, with the single member being Arkhaus

1

4897-3978-3266v.2

6.     Because Arkhaus is a Delaware corporation with a principal place of business in Florida, Ark Vessels is considered to be a citizen of either Delaware or Florida.

7.     The Arkhaus Assets (as defined herein) were or are located in Bedford, Lawrence County, Indiana.

8.     Pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction over matters provided that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs" and the matter or controversy "is between citizens of different states" and "citizens and  of a State and citizens of a foreign state."

9.     The Plaintiff is a citizen of a different country than all Defendants (with the same being true regardless of whether Arkhaus and Ark Vessels are citizens of Delaware, Florida, or both states).

10.     The amount in controversy excluding greatly exceeds $75,000, exclusive of interest and costs, as it relates to unique assets and products that were purchased for well over the jurisdictional threshold.

11.     The Court has subject-matter jurisdiction over the issues raised herein and personal jurisdiction over the parties named herein.

12.     Venue is proper in this Court as the claims herein relate to actions directed at, and/or property located, in Lawrence County, Indiana.

## FACTUAL ALLEGATIONS

13.     Alliswell purchased, pursuant to a Construction and Purchase Agreement with Arkup Sales, LLC ("Arkup Sales"), Arkup 50 Unit #7, a *unique*

2

4897-3978-3266v.2

vessel that is approximately 85% complete and located at the former manufacturing facility of Arkup Sales in a Bedford, Indiana facility.

14. Arkup Sales and its affiliate, Arkup, LLC (collectively, the "Arkup Assignment Entities") commenced assignment for the benefit of creditors proceedings (the "ABC Proceedings") in Miami, Florida, in March 2025 through the assignment of their assets to Michael Dunn, as Assignee.

15. During the ABC Proceedings, the Assignee marketed certain of the Arkup Entities' assets to various parties and entered into a stalking horse Bid Agreement with a deadline to receive competing bids with the minimum qualifying bid to be $525,000. The Assignee received two (2) qualifying overbids of $525,000, one by Arkhaus, Inc. and one by Adam Rabie, the principal of Alliswell. Accordingly, thereafter the Assignee scheduled an auction for the assets to be held on May 2, 2025.

16. During the auction, Arkhaus and Rabie announced an agreement to submit a joint bid using the Arkhaus Qualifying Bid. The Assignee conducted the auction and accepted the joint bid as the highest and best offer, expressly relying on the agreement between Arkhaus and Rabie. This joint structure was presented to the Court, acknowledged by counsel in open court, and incorporated into the Court's findings in the Sale Order. A copy of the Order is attached hereto as Exhibit "**A**".

17. The joint bid among the parties was supported by a May 2, 2025, email agreement between Arkhaus, Rabie, and third-party Matthew Stankevich ("Stankevich"), outlining their mutual obligations (the "Joint Bid Agreement").

3

18. This Joint Bid Agreement included, among other things, a 50/50 funding split between Arkhaus/Stankevich on the one hand and Rabie on the other and a period for post-closing negotiations regarding capital structure which was to include Arkhaus, Rabie, and Stankevich.

19. The Sale Order provided that, with the consent of the Assignee and Arkhaus, Arkup 50 Livable Yacht #7, including associated parts that are allocated to this yacht, included but not limited to the fiberglass seats, fiberglass summer kitchen and grill, aluminum folding decks and associated parts (hydraulic cylinders), solar awning structure, air conditioning, generator cooler, navigation mast and lights, navio controls from Hydrosta, hydraulic motors and spuds from EBI (collectively, the "Alliswell Assets"), were to be released and transferred by operation of the  Sale Order to Alliswell, free and clear of all liens, claims, and interests of the Assignee, the assignment estate, Arkhaus and/or their assigns.

20. After the entry of the Sales Order, and despite the clear understanding set forth in the Joint Bid Agreement, Arkhaus materially breached the Joint Bid Agreement by (without limitation):

    (i)    unilaterally funding the entire $525,000 purchase price without soliciting or accepting the agreed $262,500 contribution;

    (ii)    excluding Stankevich from further involvement in the transaction;

    (iii)    ceasing any collaboration as contemplated by the Joint Bid Agreement; and,

4897-3978-3266v.2

(iv)    proceeding with closing preparations and substituting a new business partner.

21.    Further, with malice and intent to cause competitive harm, Payrovi, individually, and Arkhaus demanded vendors not provide support or future parts and supplies to Alliswell and Rabie.

22.    These actions and breaches are ongoing on a continuous basis.

23.    In an effort to try to resolve certain of the disputes between the parties, on May 18, 2025, Arkhaus, Alliswell, and Rabie executed an Amended Joint Bid Agreement (the "Amended Joint Bid Agreement") to supersede most of the email terms, confirm ownership allocations under the Sales Order, and define specific performance deliverables. A copy of the Amended Joint Bid Agreement is attached hereto as Exhibit "**B**."

24.    The Amended Joint Bid Agreement further provided that, notwithstanding anything to the contrary herein, "in the event the Release Conditions are not satisfied, Adam Rabie shall retain the right to assert any claims or enforce any rights available to him under the Joint Bid Agreement dated May 2, 2025. Such rights shall terminate upon the effectiveness of the foregoing release."

25.    Pursuant to the Amended Joint Bid Agreement, while Arkhaus and/or a new entity, Ark Yachts, were to own the Assets transferred to Arkhaus under the Sale Order (the "Arkhaus Assets"), Rabie retained certain rights related to the Arkhaus Assets.

26.    Upon information and belief, Ark Yachts was never formed.

5

4897-3978-3266v.2

27. Instead, Arkhaus assigned all rights in the Arkhaus Assets to Ark Vessels.

28. Therefore, any actions that were purportedly taken in the name of Ark Yachts were taken either by Payrovi individually or by Ark Vessels.

29. Under the Amended Joint Bid Agreement, without limitation, Rabie, the principal of Alliswell, retained the rights:

   a. to build a mold from the completed hull plug or, in the event that Ark Yachts (or Payrovi or Ark Vessels) declined to repair or build a new hull plug, to have Ark Yachts (or Payrovi or Ark Vessels) ship the hull plug, at its expense, to a production facility designated by Rabie; and

   b. to have produced to Rabie, the principal of Alliswell, within 90 days of the Amended Joint Bid Agreement, a completed part from each of the following molds: seat mold, outside corner mold, inside corner mold, upper deck corner mold, front wall mold, summer kitchen mold, C cap mold, float mold, helm station mold, and stringer mold.

30. Arkhaus has failed to comply with its obligations under the Amended Joint Bid Agreement

31. Further, Arkhaus and/or Ark Vessels and/or Payrovi have threatened to move the Arkhaus Assets from their location in Bedford, Indiana, to another location and indeed have already commenced moving certain of the Arkhaus Assets.

6

4897-3978-3266v.2

32.  Arkhaus, and/or Ark Vessels, and/or Payrovi were requested by Alliswell and/or Rabie not to move the Arkhaus Assets.

33.  Arkhaus refuses to pay the demanded rent to the Landlord with whom the Arkhaus entities had a prior lease agreement. Based upon Arkhaus' refusal to enter into any lease agreement with the Bedford landlord, the owner of the property, Bedford, LLC, filed a lawsuit for ejectment and damages in the Lawrence Circuit Court of the State of Indiana, Case No.: 47C01-2508-PL-001052.

34.  At or around the same time that discussions regarding the Arkhaus Assets were occurring, Payrovi began a calculated and anti-competitive campaign of talking with current and future vendors and contractors of Alliswell.

35.  The vendors and contractors targeted by Payrovi are necessary to complete Alliswell's vessel.

36.  Payrovi has also intentionally made defamatory, false, and/or misleading statements targeted to influence these vendors and contractors to stop doing or not do business with Alliswell.

37.  By way of example, on information and belief, Payrovi informed vendors Aquatica, EBI, and Hydrosta, current vendors of equipment on the Alliswell vessel, not to ship parts to Alliswell that were identified under the Sale Order and the Amended Joint Bid Agreement as belonging to Alliswell. Moreover, upon information and belief, Payrovi informed Hydrosta to not provide commissioning services for Alliswell's yacht that is under construction in Indiana or future boats that may be constructed.

7

4897-3978-3266v.2

38.     On further information and belief, Payrovi represented to vendors including Aquatica, EBI and Hydrosta that Alliswell has been legally barred from receiving support, service, or parts because Payrovi allegedly held "exclusive rights" to intellectual property, contracts, warranties, and commissioning authority related to the Arkup Vessels and parts. These statements were false, misleading, and intentionally calculated to interfere with Alliswell's' ability to complete Boat #7 and an unlawful restraint of trade designed to monopolize vendor relationships and suppress competition from Alliswell in operating a competing manufacturing business.

39.     These statements were made with no justification and for no legitimate business purpose.

40.     On information and belief, Payrovi made these statements as retaliation for positions taken by Rabie with respect to disputes over the Amended Joint Bid Agreement and/or Arkhaus Assets and to interfere with efforts to complete Alliswell's vessel and start-up a competing business.

41.     These statements have caused business disruption, delays, inconvenience, and losses to Alliswell.

42.     Alliswell has complied with all conditions precedent prior to the filing of this action.

43.     As a result of the Defendants' breaches of the Amended Joint Bid Agreement, Alliswell has been required to retain legal counsel for the purposes of prosecuting this action. As a result, as set forth within the Amended Joint Bid Agreement, Alliswell is entitled to the reimbursement of costs and reasonable attorney's fees.

4897-3978-3266v.2

## COUNT I

### BREACH OF CONTRACT AGAINST
### ARKHAUS, INC., PAYROVI, AND ARK VESSELS, LLC

44.    Alliswell incorporates the prior allegations as set forth herein by reference.

45.    Arkhaus and Ark Vessels (or in the alternative Payrovi acting under the name Ark Yachts) had an obligation under the Amended Joint Bid Agreement to provide Alliswell with access to the Arkhaus Assets.

46.    Arkhaus and/or Ark Vessels (or in the alternative Payrovi acting under the name Ark Yachts) have intentionally failed to do so, in violation of the Amended Joint Bid Agreement.

47.    Arkhaus and/or Ark Vessels (or in the alternative Payrovi acting under the name Ark Yachts) have thus breached and continued to breach the Amended Joint Bid Agreement without fault by Alliswell.

48.    Alliswell has suffered and continues to suffer damages as a result of Arkhaus's multiple breaches.

49.    Further, Alliswell is suffering and will continue to suffer monetary damages.

**WHEREFORE**, Alliswell Corporation asks the Court for judgment in its favor, an award of damages sufficient to compensate it for all damages flowing from Arkhaus and/or Ark Vessels's (or in the alternative Payrovi acting under the name Ark Yachts) breach of the Amended Joint Bid Agreement, reasonable

4897-3978-3266v.2

attorney's fees and costs as allowed under the terms of the Amended Joint Bid Agreement, and all other claims for relief that this Court may deem just and proper.

## COUNT II

### DEFAMATION PER SE AGAINST
### PAYROVI and ARKHAUS, INC. and ARK VESSELS, LLC

50.     Alliswell incorporates the prior allegations as set forth herein by reference.

51.     In or around May, 2025, and thereafter, Payrovi, individually or as a representative of Arkhaus or Ark Vessels, began a calculated and anti-competitive campaign of talking with current and future vendors and contractors of Alliswell, which vendors are necessary to complete Alliswell's vessel.  Payrovi, Arkhaus and Ark Vessels's statements were defamatory, false, and/or misleading statements targeted to influence these vendors and contractors to stop doing or not do business with Alliswell.

52.     These communications were made maliciously, which resulted in harm to Alliswell.

53.     Defendants' statements were not made as a result of privilege or other mitigating circumstances.  These statements were made with the intent to destroy and/or damage Alliswell's reputation and to prevent Alliswell from continuing with a competing business.

54.     Payrovi, Ark Vessels, and Arkhaus's baseless and defamatory statements have caused Alliswell embarrassment and loss of business.

4897-3978-3266v.2

55.     Defendants' actions were malicious, in that they were deliberate and meant to cause harm.

**WHEREFORE,** Alliswell asks the Court for judgment in its favor, an award of damages sufficient to compensate them for all damages flowing from Payrovi, Arkhaus, and/or Ark Vessels' defamatory acts including all actual, special and punitive damages as allowed by law, and to such other and further relief that this court may find just and proper.

**COUNT III**

**SPECIFIC PERFORMANCE AGAINST
PAYROVI, ARKHAUS, INC. and ARK VESSELS, LLC**

56.     Alliswell incorporates the prior allegations as set forth herein by reference.

57.     The vessel acquired by Alliswell is unique in kind, quality, and nature as the molds/plugs/equipment at issue are the only ones in the world.

58.     By failing to comply with the terms and conditions of the Amended Joint Bid Agreement and Sale Order, Payrovi, Arkhaus and Ark Vessels have deprived Alliswell of the parts and access needed to complete its boat and develop molds to further its business opportunity.

**WHEREFORE,** Alliswell asks this Court for judgment in its favor, including an Order demanding that Payrovi, Arkhaus and/or Ark Vessels turn over all the molds and plugs necessary for Alliswell to make the appropriate molds as necessary, including all costs of shipping to the facility for manufacturing as provided for in the Amended Joint Bid Agreement, the

11

4897-3978-3266v.2

recovery of costs and reasonable attorney's fees, and to such other and further relief that this court may find just and proper.

## COUNT IV

### CLAIM FOR INJUNCTIVE RELIEF AGAINST ARKHAUS, INC., ARK VESSELS, LLC, and Payrovi

59.    Alliswell incorporates the prior allegations as set forth herein by reference.

60.    As set forth with particularity herein, Arkhaus and Ark Vessels (or in the alternative Payrovi acting under the name Ark Yachts) have engaged in a systematic and deliberate breach of the Amended Joint Bid Agreement in order to try to gain a market and competitive advantage over Alliswell by removing the plugs and equipment from the Bedford, Indiana warehouse facility in which Alliswell has legal right of access pursuant to the Amended Joint Bid Agreement.

61.    Arkhaus and Ark Vessels (or in the alternative Payrovi acting under the name Ark Yachts), in furtherance of their anti-competitive campaign, are removing all of the hulls, plugs, and equipment to an out-of-state undisclosed location.

62.    Because of the unique quality of the vessel and the difficulty of repositioning these pieces, money damages will not suffice, hence court intervention is necessary.

**WHEREFORE,** Alliswell asks this Court for an injunction in its favor, including an order demanding that Arkhaus and/or Ark Vessels (or in the alternative Payrovi acting under the name Ark Yachts) maintain the molds, hulls

4897-3978-3266v.2

and plugs in their current location in Bedford, Indiana, and if these assets have been removed from the warehouse from which it was previously stored, to return it back to the jurisdiction of this Court and to the prior location or a location acceptable to this Court, and to such other and further relief that this Court may find just and proper.

## COUNT V

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AGAINST PAYROVI, ARKHAUS, INC. and ARK VESSELS, LLC

63. Alliswell incorporates the prior allegations as set forth herein by reference.

64. Alliswell has valid business relationships with its contractors and vendors related to vendor agreement/contracts.

65. Payrovi had knowledge of these business relationships.

66. Payrovi, individually and/or as a representative of Arkhaus or Ark Vessels, intentionally and with malicious intent interfered with these business relationships by making statements to Alliswell's contractors and vendors that were calculated to induce these contractors and vendors to stop doing business with Alliswell.

67. Payrovi had no legal justification to make these statements.

68. Alliswell has suffered damages as result of Payrovi's conduct.

**WHEREFORE,** Alliswell asks the Court for judgment in its favor, an award of damages sufficient to compensate it for all damages flowing from Payrovi, Arkhaus's and/or Ark Vessels's tortious interference with Alliswell's business relationships including all actual, special and punitive damages as

4897-3978-3266v.2

allowed by law, and to such other and further relief that this Court may find just and proper.

## COUNT VI

### FRAUD IN THE INDUCEMENT AGAINST PAYROVI, ARKHAUS, INC. and ARK VESSELS, LLC

69.    Alliswell incorporates the prior allegations as set forth herein by reference.

70.    Alliswell entered into the Joint Bid Agreement and Amended Joint Bid Agreement based upon representations made by Payrovi, Arkhaus, and Ark Vessels (as Arkhaus's assignee).

71.    These representations set forth in the Amended Joint Bid Agreement included:

(i)    acceptance of the agreed $262,500 contribution;

(ii)   inclusion of Matthew Stankevich in the transaction;

(iii)  collaboration among the parties to the Joint Bid Agreement;

72.    The material misrepresentations made by Payrovi, Arkhaus, and Ark Vessels (as Arkhaus's assignee) were false. Each knew of the falsity at the time of entering into the Sales Order by the Court, the Joint Bid Agreement, and Amended Joint Bid Agreement.

73.    Alliswell's reliance upon these material misrepresentations caused Alliswell to cease bidding in the ABC Court for the assets, and to enter into the Joint Bid Agreement and Amended Joint Bid Agreement.

14

4897-3978-3266v.2

74.    As a result, Alliswell has suffered and will continue to suffer damages as a result of the fraudulent misrepresentations made by Payrovi, Arkhaus, and Ark Vessels.

**WHEREFORE,** Alliswell asks the Court for judgment in its favor, an award of damages sufficient to compensate them for all damages flowing from Payrovi, Arkhaus's and/or Ark Vessels's fraudulent misconduct including all actual, special and punitive damages as allowed by law, and to such other and further relief that this Court may find just and proper.

## COUNT VII

## <u>DECLARATORY JUDGMENT</u>

75.    Alliswell incorporates the prior allegations as stated herein by reference.

76.    A dispute exists between Alliswell and Defendants as it relates to the intellectual property rights related to certain property rights.

77.    Defendants take the position that one or all of them hold the exclusive rights with respect to all intellectual property, contracts, warranties, and commissioning authority related to the Arkup Vessels and parts.

78.    Alliswell claims rights in the intellectual property, contracts, warranties, and commissioning authority related to the Arkup Vessels and parts.

79.    A ripe and live controversy exists between the parties that can be resolved by this Court by way of a declaratory judgment.

WHEREFORE, Alliswell asks for judgment in its favor and declaring the parties' rights with respect to the intellectual property, contracts, warranties, and commissioning authority related to the Arkup Vessels and parts, and specifically

15

4897-3978-3266v.2

finding and determining that Defendants do not hold exclusive rights and that Alliswell has rights related to the Arkup Vessels and parts as identified in the contractual agreements between the parties, as well as all other and further relief that this Court may find just and proper.

Respectfully submitted,

BARRETT McNAGNY LLP

*/s/ William A. Ramsey*
William A. Ramsey, #26547-53
215 East Berry Street
Fort Wayne, IN 46802
P: (260) 423-9551
Email: war@barrettlaw.com

*Attorneys for Plaintiff*

16

4897-3978-3266v.2